1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    jakro@kslaw.com
2  AARON S. CRAIG (Bar No. 204741)
    acraig@kslaw.com
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1600
4  Los Angeles, California 90071
   Telephone:  (213) 443-4355
5  Facsimile:   (213) 443-4310

6  Attorneys for Plaintiff
   TOTAL TERMINALS INTERNATIONAL, LLC
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | TOTAL TERMINALS INTERNATIONAL, LLC, a limited liability company, | **Case No.** _____ |
12 | | **COMPLAINT** |
13 | Plaintiff, | |
14 | v. | [JURY TRIAL DEMANDED] |
15 | FLEXI-VAN LEASING, LLC, a limited liability company, | |
16 | | |
17 | Defendant. | |

COMPLAINT

Plaintiff TOTAL TERMINALS INTERNATIONAL, LLC ("Plaintiff" or "TTI") brings this complaint against defendant FLEXI-VAN LEASING, LLC ("Defendant" or "Flexi"), and alleges the following:

## NATURE OF THE ACTION

1. This action arises from Flexi's unjustified repudiation of its contractual obligation to pay millions of dollars in past due fees for services rendered with respect to Flexi-owned intermodal chassis "interchanged" at TTI's marine container terminal in Long Beach, California. Between June 30, 2015 and February 11, 2021, TTI invoiced Flexi a total sum of $4,197,538.51 for chassis-related services provided in connection with more than half a million out-gate transactions involving Flexi's interchanged chassis. It is undisputed that TTI performed the invoiced chassis-related services, but Flexi has refused to pay the amounts due and owing. Even if Flexi did not, through a continuous course of conduct, accept TTI's offers to perform the invoiced chassis-related services on a "per transaction" basis—rather than based upon the parties' prior per diem arrangement (Flexi did)—Flexi would be alternatively liable for chassis-related services rendered from February 1, 2018, to the present at the rates set forth in the implied contract between the parties. By continuing improperly to dispute the charges and withhold payment from TTI, Flexi has received the benefit of millions of dollars in chassis-related services for which it has paid nothing.

## PARTIES

2. TTI is a limited liability company duly licensed and organized under the laws of the State of Delaware. TTI has two members, which are residents of Switzerland and the Republic of Korea. TTI is an industry-leading marine terminal operator ("MTO") that operates a marine container terminal in the Port of Long Beach, California.

3. Flexi is a limited liability company duly licensed and organized under the laws of the State of Delaware, with a principal place of business in Scottsdale, Arizona. Upon information and belief, none of Flexi's members is a resident of Switzerland or

the Republic of Korea. Flexi's business includes the leasing of interchanged chassis for use in over-the-road transportation of intermodal shipping containers.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are of completely diverse citizenship, and the amount in controversy exceeds $75,000. For purposes of diversity jurisdiction, TTI is a citizen of both Switzerland and the Republic of Korea, and, upon information and belief, Flexi is a citizen of the State of Arizona.

5. There is personal jurisdiction over Flexi in California because, among other things, Flexi regularly conducts business in California, positions chassis at marine container terminals in California for use in California, enters short-term "leases" of chassis for use in over-the-road transportation of marine containers throughout California, negotiated and entered into contracts for chassis-related services to be performed in California, and received the benefits of chassis-related services provided in California.

6. Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the complaint occurred in this District.

## FACTS COMMON TO ALL CLAIMS

**A.    Flexi's Breach of Express Contract**

7. Flexi styles itself as "the premier intermodal chassis lessor since it was established in 1955." Among other things, Flexi leases intermodal chassis, on a short-term basis, for use in the transportation of intermodal shipping containers. Upon information and belief, Flexi provides its lessees access to "pools" of chassis positioned at marine terminals, railroad ramps, and container yards, where Flexi and the other contributors to chassis "pools" operate in a shared operating environment. Each "pooled" chassis has a unique identification number.

8. TTI operates an international marine cargo terminal located in the Port of Long Beach, California. Ocean-going container ships call TTI to discharge shipping

containers, each of which has a unique identification number. Discharged shipping containers leave TTI's container yard destined for inland points, either over rail or over the road.

9. The containerized cargo that leaves TTI for over-the-road carriage is mounted on an intermodal chassis, such as those leased by Flexi. Flexi positions its chassis at TTI (and other marine terminals) for interchange. Truckers then haul containerized cargo, mounted on Flexi-owned interchanged chassis.

10. "Pooled" chassis (such as those owned by Flexi) are not inspected upon being positioned at TTI, and they may remain—and frequently do remain—at TTI for extended periods between uses for over-the-road carriage. The use, in intermodal container transportation, of a chassis that is not roadworthy creates danger for any person sharing the road with that chassis. For many years, TTI's chassis-related services to Flexi have included roadworthiness inspections of interchanged chassis. TTI's chassis-related services to Flexi have also included the provision of information, by electronic data interchange ("EDI"), concerning the particular Flexi-owned interchanged chassis that have left TTI and the particular cargo container mounted on each such chassis. Flexi uses this information to bill its customers for the use of interchanged chassis.

11. Prior to 2015, Flexi paid a per diem rate for chassis-related services including roadworthiness inspections (commonly referenced as chassis "roadability inspections" or "pre-inspections") provided by TTI. This negotiated per diem rate increased annually to cover increased labor costs associated with TTI's chassis-related services. In 2014, during rate increase negotiations, Flexi sought to change its agreement with TTI from a per diem charge for chassis services (including "roadability" inspections and certain basic and routine maintenance tasks) to an agreement to pay for the specific maintenance tasks performed and the "roadability" inspection performed on each Flexi-owned chassis that exited TTI. To accommodate Flexi's request, TTI offered Flexi a schedule of rates for chassis-related services, including a chassis "pre-

inspection" fee for each Flexi-owned chassis that exited TTI. TTI offered to perform the chassis "pre-inspections" for a fee of $7.03 for each out-gate transaction. Flexi accepted TTI's offer through its continuous course of conduct of accepting such chassis-related services (and the benefits of such services) performed at TTI's Long Beach terminal.

12. Since June 2015, TTI has performed chassis-related services for more than half a million out-gate transactions involving Flexi-owned interchanged chassis. Flexi's acceptance of TTI's offer created a contract between the parties. Accordingly, TTI invoiced Flexi at the contractual rate of $7.03 for each out-gate transaction between June 2015 and July 2019 involving a Flexi-owned interchanged chassis was.

13. TTI subsequently notified Flexi of rate increases for its chassis-related services in July 2019 and July 2020. In July 2019, TTI notified Flexi that it would perform chassis-related services on or after June 29, 2019, for a per out-gate transaction fee of $15.90. One year later, in July 2020, TTI informed Flexi that it would perform chassis-related services on or after July 4, 2020, for a per out-gate transaction fee of $17.05, inclusive of EDI. (This per transaction fee is calculated as 0.1 mechanic labor hours multiplied by the mechanic "man hour" rate of $170.49.) Flexi agreed to this increased rate in the course of negotiating and exchanging drafts of a Chassis Inspection, Maintenance and Repair Service Agreement with TTI.

14. Moreover, after TTI notified Flexi of the increased rates and invoiced Flexi at those rates. Flexi accepted the increased rates by accepting the benefits of the chassis-related services performed at TTI's terminal. Flexi's acceptance of the increased rates created an enforceable contract between the parties for the amounts invoiced to Flexi for chassis-related services performed by TTI between November 2019 and February 11, 2021.

15. As of February 11, 2021, TTI has invoiced Flexi a total of $4,197,538.51 for chassis-related services provided to Flexi between June 2015 and January 2021. Despite receiving the benefits of such services, Flexi has refused to pay any amount due

and owing for roadworthiness inspections and EDI services performed by TTI.

16. TTI's invoicing of chassis "pool" contributors, including Flexi, for chassis-related services is standard; TTI charges fees for the same chassis-related services to all providers of interchanged chassis, and numerous other marine terminal operators in the Ports of Los Angeles and Long Beach list such services in their respective MTO rate schedules.

### B. Flexi's Breach of Implied Contract

17. Flexi is also liable to TTI based on an implied contract that existed between the parties.

18. On February 1, 2018, TTI established, and at all relevant times maintained, a Marine Terminal Operator Rate Schedule ("Terminal Schedule").[1]

19. The Terminal Schedule is a legally enforceable contract between Flexi and TTI. As specified in Section II of the Terminal Schedule, the rates, regulations, practices, contractual terms and conditions set forth in the Terminal Schedule apply whenever a customer, such as Flexi, requests, is provided with, or receives TTI's terminal services, including the chassis "roadability inspections" or "pre-inspections" undertaken prior to a chassis' egress from TTI's terminal. (Exh. A at 19.)

20. Pursuant to section 8(f) of the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998 and the Coast Guard Authorization Act of 1998, and the regulations of the Federal Maritime Commission (Title 46, Code of Federal Regulations, Part 525), the terms set forth in the Terminal Schedule apply to TTI's terminal in the Port of Long Beach. (Exh. A at 12.)

21. Under the Terminal Schedule, the fee for chassis inspections performed from January 1, 2018, through June 30, 2018, is $9.70 per inspection performed during TTI's first (day) shift, and $12.20 per inspection performed during TTI's second (night) shift. (Exh. A at 37; Exh. B at 48.)

---

[1] TTI's Terminal Schedule and its accompanying Time Task Tariff are incorporated by reference and attached hereto as Exhibits A and B.

5
COMPLAINT

22. Additionally, Part II.A of the Terminal Schedule provides that the rates specified for chassis inspections are subject to annual adjustments that reflect increases in wages for the mechanics who perform chassis "roadability" inspections. (Exh. A at 19.) The rates for chassis inspection services under the Terminal Schedule increased as follows:

(i) For inspections performed during the period July 1, 2018, through June 30, 2019, the chassis inspection fee increased to $10.60 for the first (day) shift and $13.32 for the second (night) shift;

(ii) For inspections performed during the period July 1, 2019, through June 30, 2020, the chassis inspection fee increased to $11.18 for the first (day) shift and $14.05 for the second (night) shift;

(iii) For inspections performed during the period July 2020 to present, the chassis inspection fee increased to $11.75 for the first (day) shift and $14.77 for the second (night) shift.

23. Accordingly, even if Flexi had not accepted TTI's offers for "per transaction" chassis services fees (it did), Flexi would nevertheless be liable to TTI for millions of dollars in charges incurred under the Terminal Schedule for chassis roadworthiness inspections performed since January 1, 2018.

24. As a result of Flexi's actions, which are in direct breach of its express contractual obligations, TTI has suffered damages in an amount to be determined at trial, including, but not limited to, the unpaid sums for chassis-related services invoiced since June 30, 2015. Alternatively, Flexi is liable for the amount due and owing for the chassis roadworthiness inspections performed by TTI since February 1, 2018, at the rates set forth in the Terminal Schedule. Under either theory of liability, Flexi is also liable for the substantial amounts of interest incurred on the amounts due and owing, including prejudgment interest running from the date each amount was due. Cal. Civil Code § 3287(a).

//

**FIRST CAUSE OF ACTION**

**BREACH OF EXPRESS CONTRACT**

25. TTI re-alleges and incorporates by, reference herein each allegation contained in paragraphs 1–24, above.

26. TTI and Flexi are parties to an express agreement arising from TTI's offer to perform chassis-related services at "per transaction" rates, and Flexi's subsequent acceptance of those rates by its accepting of TTI's chassis-related services. Flexi's acceptance created an enforceable contract at the rates invoiced by TTI since June 30, 2015.

27. TTI has performed its obligations under the parties' agreement by providing chassis-related services for more than half a million out-gate transactions involving Flexi-owned interchanged chassis since June 2015.

28. Flexi breached its obligations by refusing to pay TTI the invoiced amounts due and owing.

29. As a result of Flexi's breach, TTI has suffered damages in an amount to be proven at trial, including, but not limited to, the unpaid sums invoiced to Flexi since June 30, 2015, plus interest at the statutory rate, computed from the date of breach with respect to each TTI invoice.

**SECOND CAUSE OF ACTION**

**BREACH OF IMPLIED CONTRACT**

30. TTI re-alleges and incorporates by reference herein each allegation contained in paragraphs 1–29, above.

31. TTI and Flexi are parties to an implied contract based upon TTI's Terminal Schedule, including its Time Task Tariff.

32. Since February 1, 2018, TTI has performed thousands of chassis "roadability inspections" or "pre-inspections" on chassis owned by Flexi.

33. Flexi breached its implied contractual obligations by refusing to pay amounts due and owing for chassis "roadability inspections" or "pre-inspections"

performed by TTI since February 1, 2018, at the rates specified in the Terminal Schedule and its Time Task Tariff.

34. As a result of Flexi's breach, TTI has suffered damages in an amount to be proven at trial, including, but not limited to, unpaid amounts that are due and owing for roadability inspections performed on Flexi's chassis since February 1, 2018, at the rates specified in the Terminal Schedule and Time Task Tariff, plus interest as specified in the Terminal Schedule. (Exh. A at 25.)

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

35. TTI re-alleges and incorporates by reference herein each allegation contained in paragraphs 1–34, above.

36. Implied in every contract or agreement is a promise of good faith and fair dealing. This means that each party agrees not to do anything to unfairly interfere with the right of the other party to receive the benefits of the agreement.

37. TTI and Flexi are parties to an express contract arising from Flexi's acceptance of millions of dollars' worth of chassis-related services invoiced by TTI since June 30, 2015.

38. TTI has complied with its obligation of good faith and fair dealing under the express agreement between the parties by performing chassis-related services for more than half a million out-gate transactions involving Flexi-owned interchanged chassis.

39. Flexi has breached its obligation of good faith and fair dealing by unfairly interfering with TTI's right to receive payment for the services TTI undisputedly rendered by improperly disputing and refusing payment on the invoices sent by TTI.

40. As a result of Flexi's breach, TTI has suffered damages in an amount to be proven at trial, including, but not limited to, the unpaid sums invoiced to Flexi since June 30, 2015.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT

41. TTI re-alleges and incorporates by reference herein each allegation contained in paragraphs 1–40, above.

42. TTI alleges that it entered into a valid and enforceable express contract with Flexi. In the event the Court or a factfinder were to find otherwise, TTI alleges that Flexi unjustly received at least $4,197,538.51 from TTI as a result of its wrongful conduct alleged herein and its refusal to pay TTI for the services it undisputedly performed.

43. As a result, TTI has conferred a benefit upon Flexi to which Flexi is not entitled. Flexi has knowledge of this benefit, has wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained benefits conferred upon it.

44. Flexi would be unjustly enriched if it were allowed to retain such funds.

45. As a result of Flexi's conduct, TTI has directly and legally suffered actual damages including, but not limited to, loss of at least $4,197,538.51, costs of suit, and other pecuniary loss in an amount to be proven at trial. Accordingly, TTI seeks restitution from Flexi.

## FIFTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

46. TTI re-alleges and incorporates by reference herein each allegation contained in paragraphs 1–45, above.

47. California's Unfair Competition Law ("UCL"), as codified in California Business & Professions Code § 17200 *et seq.*, prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

48. Flexi's refusal to pay TTI for services rendered constitutes unlawful, unfair, and fraudulent business acts and/or practices and thereby constitute unfair competition under the UCL.

49. TTI has suffered harm as a result of Flexi's conduct alleged herein and will

continue to suffer harm as it bears the costs of the millions of dollars of services performed for Flexi's benefit—for which Flexi has paid nothing.

50. TTI is entitled to an award of restitution in an amount sufficient to repair the injuries it has suffered.

## SIXTH CAUSE OF ACTION
## DECLARATORY RELIEF

51. TTI re-alleges and incorporates by reference herein each allegation contained in paragraphs 1–50, above.

52. An actual, present, and justiciable controversy has arisen between TTI and Flexi concerning their respective rights concerning chassis-related services performed at TTI's terminal on Flexi's chassis.

53. Flexi has refused to pay TTI either (1) the invoiced amounts due and owing for the chassis inspections performed on Flexi's chassis between June 2015 and the present at the contracted-for "per transaction" rates expressly agreed upon by the parties as alleged herein; or (2) the amounts due and owing for inspections performed at TTI's terminal on Flexi's chassis between January 1, 2018, and the present at the rates specified in TTI's Terminal Schedule.

54. TTI accordingly seeks a declaratory judgment that Flexi breached the express contract that existed between the parties for chassis inspection services at the agreed-upon "per transaction" rates as alleged herein.

55. Alternatively, TTI seeks declaratory judgment that Flexi breached the implied contract that existed between the parties for chassis services provided under the Terminal Schedule.

56. TTI further seeks declaratory judgment that Flexi has an obligation to pay TTI for chassis inspections on Flexi chassis at either the contracted-for "per transaction" rates or the rates specified by the Terminal Schedule.

//

//

## PRAYER FOR RELIEF

WHEREFORE, TTI prays for judgment against Flexi as follows:

1. For actual damages adequate to compensate TTI according to proof;
2. For cost of the suit incurred herein;
3. For restitution according to proof;
4. For attorney's fees as permitted by law;
5. For pre-judgment and post-judgment interest;
6. For an entry of judgment consistent with the declaratory relief sought; and
7. For such further and other relief in law or equity that the Court deems just and proper.

## REQUEST FOR JURY TRIAL

TTI demands a trial by jury on all claims and issues so triable.

Dated:  February 18, 2021          **KING & SPALDING LLP**

By: */s/Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
Attorneys for Plaintiff
TOTAL TERMINALS INTERNATIONAL, LLC